UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**JANICE ELLIS,**
    Debtor

Chapter 13
Case No. 07-18268-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM
### I. INTRODUCTION

The matter before the Court is the Chapter 13 Trustee's Objection to Confirmation of the Debtor's Chapter 13 Plan to which the Debtor filed a timely response. The Court conducted a hearing on the Trustee's Objection on May 1, 2008 at which time the parties requested the Court to determine a threshold legal issue, namely whether a plan through which a debtor proposes to make no monthly plan payments is confirmable.

### II. FACTS

Janice Ellis (the "Debtor") filed a voluntary petition under Chapter 13 on December 31, 2007, together with Schedules, a Statement of Financial Affairs, Official Form 22C, and a Chapter 13 Plan. On Official Form 22C, the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, the Debtor, pursuant to 11 U.S.C. § 1325(b)(3), reported gross monthly income for herself and her non-debtor spouse of $12,870 and current monthly income for herself and her non-debtor spouse in the sum of $11,022. Because her income exceeds the applicable median family income for Massachusetts for her household size, the Debtor completed the remaining

1

parts of Official Form 22C. She calculated her monthly disposable income by subtracting total deductions of $12,318 from her current monthly income of $11,022 to arrive at -$1,296.

On Schedule A-Real Property, the Debtor listed an ownership interest in property located at 5 Bray Street, Gloucester, Massachusetts (the "Gloucester Property"), which she valued at $334,000. She did not identify the nature of her ownership interest in the Gloucester Property. On Schedule C - Property Claimed as Exempt, the Debtor claimed the Gloucester Property, as well as virtually all of her Personal Property listed on Schedule B, as exempt. On Schedule D - Creditors Holding Secured Claims, the Debtor listed Citi Mortgage as the holder of two claims, totaling $355,292 secured by mortgages on the Gloucester Property. The Debtor listed no unsecured priority claims on Schedule E, but she listed $162,933 in nonpriority, unsecured debt on Schedule F.

On Schedules I and J-Current Income and Expenses of Individual Debtor(s), the Debtor listed gross monthly income of $14,659 for herself and her non-debtor spouse and net monthly income of $9,254 and monthly expenses of $10,760, resulting in no monthly net income. Indeed, according to her Schedules I and J, the Debtor expenses exceeded her income by $1,506.[1]

The Debtor proposed a 60-month Chapter 13 plan with no monthly plan payment. In her plan, the Debtor disclosed no mortgage arrears to Citi Mortgage with respect to the mortgages encumbering the Gloucester Property, and she indicated that she did not intend

---

[1] The Debtor's monthly expenses on Schedule J include $1,000 for food, $600 in transportation expenses, $1,060 in other automobile expenses; $1,400 for "husband's credit cards," and $2,000 in school expenses.

2

to pay any secured claims through her plan. Rather, she proposed to pay Citi Mortgage's secured claims directly. Thus, the Debtor's plan provided for no payments to any class of creditors, including unsecured creditors whose claims, according to the Debtor's plan, total $184,225, a sum which includes a deficiency claim of $21,292 owed to Citi Mortgage.[2]

The Trustee filed both a Motion to Dismiss and an Objection to Confirmation of the Debtor's plan. In her Motion to Dismiss, the Trustee alleged that the Debtor failed to appear at the meeting of creditors, failed to provided the Trustee with a copy of her most recent tax return and the requisite number of pay advices, and failed to make her first plan payment pursuant to 11 U.S.C. § 1326(a)(1). The Trustee subsequently withdrew her Motion to Dismiss.[3]

### III. POSITIONS OF THE PARTIES

In her Objection to Confirmation, the Trustee asserted that "the Plan . . . fails to provide for any payments to creditors . . . and is not filed in good faith." The Trustee, citing 11 U.S.C. §§ 109(e) and 101(30), as well as Lindholm v. Rodgers (In re Lindholm), No. 04-90452, 2005 WL 2218990 (W.D. Mich. Sept. 13, 2005), also argued that the Debtor

---

[2] Citi Mortgage did not file an objection to confirmation of the Debtor's plan. The Court must infer that the Debtor was not in default under the mortgages held by Citi Mortgage and that Citi Mortgage did not wish to contest the Debtor's proposed bifurcation of one its secured claims despite the provisions of 11 U.S.C. § 1322(b) and Nobelman v. American Savs. Bank, 508 U.S. 324 (1993).

[3] The Debtor failed to respond to the Trustee's Motion to Dismiss and her case was dismissed on March 4, 2008. She filed a Motion to Vacate the order of dismissal, which the Court granted in the absence of objections on April 10, 2008.

does not have regular income to fund a plan and therefore is ineligible to be in Chapter 13. She maintained that the Debtor's plan is little more than a veiled Chapter 7 and was not filed in good faith.

The Trustee also challenged two deductions from income made by the Debtor, one appearing on Schedule I in the amount of $1,128 for "Deferred Compensation" because the Debtor provided no evidence that the amount deducted pertained to an ERISA-qualified retirement plan, see 11 U.S.C. § 541(b)(7)(A) and (B), and the other appearing in the Debtor's pay advices in the weekly amount of $12.50 for "savings bond." In addition to challenging the Debtor's income deductions, the Trustee challenged the Debtor's expenses appearing on Schedule J, including $500 per month for electricity and heating fuel, $340 per month for telephone charges, $300 per month for recreation, clubs and entertainment, $120 per month for haircuts, and $2,000 for "school expenses" for her 18 and 19 year old children.[4]

The Trustee noted deficiencies with respect to the Debtor's reporting of her income on Official Form 22C as well. In particular, the Trustee stated:

> The Debtor lists total gross monthly income on Line 11 as $12,870, which is the combined gross income from Schedule J [sic], but then deducts $1,848.00 as a "marital adjustment" on Line 13 and again on Line 19, thereby reducing the income to $11,022.00. The Debtor has failed to provide any explanation for this marital adjustment or any documentation of this adjustment. On Schedule J, the Debtor lists and expense of $1,400.00/month for 'husband's

---

[4] The Trustee notes that pursuant to 11 U.S.C. § 707(b)(2)(A)(IV), a debtor's monthly expenses may include the actual expense of each dependent child under 18 years of age, not to exceed $1,500 per year, to attend private or public elementary or secondary school if the debtor documents the expense.

4

credit cards' however, this expenses is included as an overall household expense, and subtracted from the total household income. [sic] The Trustee asserts that there is no basis for any marital adjustment, and that the Debtor's actual total gross income is $12,870.00.[5]

Thus, according to the Trustee, the Debtor would have had $552 ($12,870 - $12,318 = $552) in monthly disposable income under 11 U.S.C. § 1325(b)(3) had she completed Official Form 22C correctly as opposed to -$1,296.

Finally, the Trustee observed that the Debtor improperly attempted to cramdown Citi Mortgage's claim through her plan.

The Debtor responded to the Trustee's Objection. Relying upon this Court's decision in In re Phillips, 382 B.R. 153 (Bankr. D. Mass. 2008), she maintained that 11 U.S.C. § 707(b)(2)(A), which is incorporated into 11 U.S.C. § 1325(b)(3) and implemented by Official Form 22C, is controlling for determining her monthly disposable income. She rejected the Trustee's argument that her plan was submitted in bad faith because when calculated in accordance with the statute she has no disposable income. Nevertheless, the Debtor requested time to submit evidence that her husband's $1,128 per month deduction is to an ERISA-qualified retirement plan, although she added, citing 11 U.S.C. §101(10A)(B), that "[o]nly amounts regularly contributed to the household are included in the debtor's spouse's income."[6] Additionally, the Debtor addressed the Trustee's challenge to her

---

[5] The Debtor's combined gross income appearing on Schedule I is $14,659.

[6] Section 101(10A)(B) provides in relevant part:
The term "current monthly income" - -
(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the

5

marital adjustment deductions of $1,848, stating that she "will attempt to produce evidence corroborating these expenses." She also asserted that her husband pays the school expenses of $2,000 per month.

## IV. ANALYSIS

As noted above, the Trustee relies upon, inter alia, In re Lindholm, a pre-BAPCPA case.[7] In that case, the district court affirmed the dismissal of a Chapter 13 case, finding that the debtor, who had a monthly budget deficit of approximately $400 and who had proposed a plan through which unsecured creditors would receive nothing, was not eligible for Chapter 13 relief. The district court outlined applicable law as follows:

> 11 U.S.C. § 109(e) governs who may be a debtor under the Bankruptcy Code. Section 109(e) provides "[o]nly an individual with regular income . . . may be a debtor under chapter 13 of this title." An "individual with regular income" is defined in 11 U.S.C. § 101(30) as an "individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title, other than a stockbroker or a commodity broker." A cursory review of the above provisions as applied to the facts of this case reveals that Debtor does not qualify as a "debtor under chapter 13." By its terms § 101(30) requires that an individual have a

---

household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.
11 U.S.C. § 101(10A)(B).

[7] BAPCPA refers to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

> sufficiently stable income such that they are able to "make payments" under the Chapter 13 plan in order to qualify as a debtor. In this case, Debtor has a monthly budget deficit of $400.99. Consequently, she cannot "make payments" under the plan and thus does not qualify as a debtor under 11 U.S.C. § 109(e).

2005 WL 2218990 at * 1 (citing, inter alia, In re Terry, 630 F.2d 634, 635 (8th Cir.1980) ("[§ 101(30)] contemplates that a debtor make payments, and that the debtor's income sufficiently exceeds his expenses so that he can maintain a payment schedule. . . The debtors in this case have no excess income out of which to 'make payments,' and therefore, they are not eligible for Chapter 13 relief under § 109(e)"); In re Francis, 273 B.R. 87, 92 (B.A.P. 6th Cir.2002) ("There is, however, a quid pro quo for the expanded discharge available under Chapter 13. The debtor must devote all his projected disposable income for three years to the plan's payments.")). The court in Lindholm determined the issue before it, namely whether the debtor was eligible for Chapter 13 relief, without reference to her good faith in filing a zero payment plan.

Like the court in Lindholm, this Court finds that resolution of the issue depends upon the provisions of the Bankruptcy Code, and the issue of the Debtor's good faith in proposing a zero payment plan need not be determined at this time. The amalgam of Chapter 13 provisions, together with the definition of "current monthly income" set forth in section 101(10A) and the definition of the term "individual with regular income" set forth in section 101(30), when read together, compel the conclusion that a zero payment plan under which a debtor makes no payments to the Trustee for distribution to any class of creditors provided for under the plan cannot be confirmed. To confirm a Chapter 13

7

plan which should more appropriately be a Chapter 7 case, contravenes the express provisions of Chapter 13 and its overall purpose of providing a structure for repayment of debt. Simply put, "Chapter 13 is not a vehicle for disguised Chapter 7 relief." *See* 1 Keith M. Lundin, Chapter 13 Bankruptcy 3d Edition, § 3.2 at 3-3 (2000 & Supp. 2007).

Although the Debtor has stable and regular income, she has insufficient income to enable her "to make payments *under a plan* under Chapter 13." *See* 11 U.S.C. § 101(30)(emphasis added). Moreover, in view of her monthly budget deficit, the Debtor has no disposable income and thus she did not and cannot submit her future income to the control of the Chapter 13 Trustee, thus violating the mandatory provision of section 1322(a)(1) which provides that "[t]he plan shall - (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan." *See* 11 U.S.C. § 1322(a)(1). Additionally, section 1326(a) requires debtors to "*commence making payments* not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount - (A) *proposed by the plan* to the trustee . . . ." *See* 11 U.S.C. § 1326(a)(1)(A)(emphasis supplied). *See also* 11 U.S.C. § 1326(a)(2)("A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation."). Finally, section 1328(a) provides, subject to exceptions not relevant here, that "as soon as practicable after completion by the debtor of all *payments under the plan . . .* the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title . . . ." See 11 U.S.C. § 1326(a)(emphasis supplied).

Assuming for purposes of this decision only that the Debtor properly completed Official Form 22C, the Debtor reported no disposable income under 11 U.S.C. § 1325(b)(3). Accordingly, she has no projected disposable income for purposes of 11 U.S.C. § 1325(B)(1)(B), and the applicable commitment period is not implicated. As recognized by the court in In re Rush, __ B.R. __, Nos. 07-21739, 07-21932, 2008 WL 1848623 (Bankr. W.D. Mo. 2008), "several courts have held that if the debtors' disposable income is negative, the applicable commitment period concept is simply irrelevant and debtors have no requirement to pay any specific amount to their unsecured creditors for any particular period of time." Id. at *6 (citing In re Alexander, 344 B.R. 742, 751 (Bankr.E.D.N.C.2006) (applicable commitment period irrelevant when debtor has no projected disposable income pursuant to B22C); In re Lawson, 361 B.R. 215 (Bankr. D. Utah 2007) (same); In re Brady, 361 B.R. 765 (Bankr.D.N.J.2007) (same); In re Frederickson, 368 B.R. 825 (Bankr. E.D. Ark. 2007), aff'd, 375 B.R. 829 (B.A.P. 8th Cir.) (same); In re Green, 378 B.R. 30 (Bankr. N.D.N.Y. 2007) (same)). But see In re Musselman, 379 B.R. 583 (Bankr. E.D.N.C. 2007) (plan must run for 60 months even if projected disposable income is negative). If it is unnecessary for the Debtor, as an above-median income debtor, to propose a five-year plan, and, if, as she proposes, she intends to make no payments to the Chapter 13 Trustee, the following question arises: Is any purpose served by filing a Chapter 13 plan and requiring the Chapter 13 Trustee to administer it without receipt of a statutory commission, see 28 U.S.C. § 586(e)? Stated another way, wouldn't the Debtor be better served by filing a Chapter 7 case, particularly in view of the abolishment by BAPCPA of the so-called "super discharge"

that was available under former section 1328(a) which makes the Chapter 7 and Chapter 13 discharge less significant. If the Debtor actually has no monthly net income after deducting allowable expenses, the presumption of abuse would not arise under 11 U.S.C. § 707(b)(2)(A), and the Debtor could obtain a discharge within months, not years.

**V. CONCLUSION**

Upon consideration of the foregoing, the Court shall enter an order sustaining the Chapter 13 Trustee's objection to the Debtor's zero payment plan. The Court shall also enter an order requiring the Debtor to either file an amended Chapter 13 plan providing for payments under a plan, as well as evidence of the propriety of the marital adjustment, *see generally* In re Shahan, 367 B.R. 732 (Bankr. D. Kan. 2007), and evidence relative to the Trustee's other objections to the Debtor's Official Form 22C expense deductions, or a motion to convert to Chapter 7. The Court's decision is limited to those circumstances where debtors propose to make no payments "inside" the plan. A plan pursuant to which a debtor proposes to cure mortgage arrearages or satisfy priority debt is not before the Court and would raise other issues not applicable here.

By the Court,

*[signature]*

_____
Joan N. Feeney
United States Bankruptcy Judge

Dated: June 10, 2008
cc: Daniel Gindes, Esq., Carolyn Bankowski, Esq.